IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| WILLIAM WALLACE, | ) | C/A No. 4:07-872-CMC-TER |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| ALVIN S. GLENN DETENTION CENTER, NFN GRAY, KENNETH SLIGH, ROY JOHNSON, COSTELLA DOBEY, EARNEST SIMMONS, SIGNEOUS GREEN, AND NFN BOSTIC, | ) ) ) ) ) ) ) | |
| | ) | |
| DEFENDANTS. | ) ) | |

The plaintiff, William Wallace ("plaintiff/Wallace"), filed this action on March 29, 2007, alleging various claims for violations of his constitutional rights pursuant to 42 U.S.C. § 1983.[1] At the time of the incident alleged in his complaint, the plaintiff was housed at the Alvin S. Glenn Detention Center ("ASGDC").[2] Before the undersigned is the defendants' summary judgment motion (document # 27).[3]

---

[1] This date reflects that the petition was stamped as having been received on March 29, 2007, at the Kirkland Correction Institution's mailroom. (Compl. Attach. 1.) Houston v. Lack, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

[2] The plaintiff is currently incarcerated at the Allendale Correctional Institution ("ACI") in Fairfax, South Carolina.

[3] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

## I. PROCEDURAL BACKGROUND

On October 26, 2007, the defendants filed a motion for summary judgment, along with supporting memorandum, affidavits, and exhibits. (Document # 27.) The undersigned issued an order filed October 29, 2007, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir.1975), advising the plaintiff of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. On February 28, 2008, the plaintiff filed a response opposing the defendants' motion for summary judgment. (Document # 41.)

## II. DISCUSSION

### A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

At the time of the incidents alleged in the complaint, the plaintiff was a pre-trial detainee at the ASGDC. The plaintiff alleges that on February 2, 2006, he was maced and physically assaulted by defendants Lt. Sligh, Sgt. Johnson, and Officers Dobey, Green, Gray, Bostic, and Simmons. (Compl. at 3.) He states they failed to follow proper procedures because he was maced without a camera recording the incident. The plaintiff also alleges the defendants violated his Fifth and Eighth Amendment rights through the use of excessive force, infliction of cruel and unusual punishment, and deliberate indifference to his medical needs.

Specifically, the plaintiff alleges that at 8:30 p.m. on February 2, 2006, some detainees in the plaintiff's unit at ASGDC popped the sprinkler heads in their cells. Immediately prior to that, the plaintiff states that he had requested that he be taken to the medical facility because of chest pain. (Compl. at 3.) He alleges he told defendant Sgt. Johnson that he needed to see a doctor for his chest pains, and Sgt. Johnson told him to drink some water and lay down. He states some profanity was exchanged and Lt. Sligh slammed the plaintiff's finger in the trap door. He further states that he

2

tried to reach his hand through the trap door at Lt. Sligh when Sgt. Johnson gassed him with mace. (*Id*.) He alleges that the Sligh and Johnson came into his cell and assaulted him. The plaintiff states that he was placed into hand and leg cuffs and taken downstairs to the shower so that the defendants could take his personal belongings. (*Id.*) He states that he refused to get into the shower and asked to go to medical. He alleges that he was then assaulted by Officer Dobey who choked him as he fell to the ground. (*Id*.) He alleges Officers Green and Gray kicked him several times and then Officer Simmons threw him into the shower head first and dislocated his shoulder. He also alleges he sustained several cuts and bruises and that he did not receive any medical attention for two weeks. He is seeking actual damages for defamation of character, violations of his due process rights, mental anguish, physical injuries, pain and suffering, and for past, present, and future medical bills. (Compl. at 5.)

### B. STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir.1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed.R.Civ.P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts

showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed.R.Civ.P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. Fed.R.Civ.P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In Celotex, the Court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### C. LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

At the time of the alleged incidents, the plaintiff was confined at the ASGDC as a pretrial detainee.[4] Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir.1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651, 671-72 (1977)(citations omitted):

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the

---

[4] The plaintiff was booked into the ASGDC on September 10, 2004, and was released to the South Carolina Department of Corrections on March 6, 2007, after he was convicted. (Defs.' Mem. Supp. Summ. J. Mot. Ex. A at 26-29.) The docket reflects that the plaintiff is currently being housed at ACI..

4

> State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

Since the plaintiff is proceeding pro se, this court is required to treat his filings and pleadings with some degree of liberality. Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S. 9 (1980) (per curiam). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. (*Id.*) However, the plaintiff is cautioned that the court may not rewrite his pleadings, Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir.1999), or construct the defendant's legal arguments for him, Small v. Endicott, 998 F.2d 411, 417-418 (7th Cir.1993), or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1274,1278 (4th Cir.1985). Further, while the court should afford a pro se litigant every reasonable opportunity to construct and present his side, the court cannot act as counsel for the pro se litigant or excuse a failure to comply with the rules of this court.

## D. EXHAUSTION

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a §1983 action concerning his confinement. 42 U.S.C.A. §1997(e) states:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In Porter v. Nussle, 534 U.S. 516 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. Recently in Woodford v. Ngo, ___ U.S. ___ , 126 S. Ct. 2378, 2386, 165 L.Ed.2d 268 (2006), the United States Supreme Court held that the PLRA exhaustion requirement requires proper exhaustion. The Court stated that "[a]dministrative law requires proper exhaustion of administrative remedies which means using all steps that the agency holds out, and doing so properly." *Id*. (Internal quotations and citations omitted). Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including §1983. *Id*.

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Woodford, 126 S.Ct. at 2385 (*quoting* McCarthy v. Madigan, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id*. Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

The ASGDC has established an inmate grievance procedure for inmates to grieve issues regarding their confinement at the detention center. (Defs.' Mem. Supp. Summ. J. Mot. Ex. A- Harrell Aff. ¶¶ 12-14.) The defendants submitted a copy of the plaintiff's grievance record and a review of it shows that the plaintiff has not exhausted the inmate grievance procedure with regards to the claims raised in this action. (Harrell Aff. ¶ 15 and Ex. A.) The plaintiff did not dispute this argument in his response to the defendants' summary judgment motion or raise any argument to excuse his non-exhaustion. (*See generally* Pl.'s Mem. Opp. Summ. J. Mot.) Accordingly, the undersigned recommends this action be dismissed as the plaintiff failed to exhaust his administrative remedies. Alternatively, the undersigned recommends the defendants be granted summary judgment on the merits.

### E.  MERITS

**1.  Excessive Force Claims**

The plaintiff alleges he was subjected to excessive force by the defendants on February 2, 2006, when he was assaulted by the defendants. The defendants contend the plaintiff is confusing two separate incidents and that the plaintiff was not maced on February 2, 2006. (Defs.' Mem. Supp. Summ. J. Mot. at 4.) Further, the defendants contend the plaintiff's claims have no merit. The undersigned agrees.

On February 2, 2006, the defendants state that inmates in cells adjacent to the plaintiff were causing a disturbance. The defendants state that these inmates coordinated a miniature riot by breaking sprinkler heads and barricading their cell doors. (Defs.' Mem. Supp. Summ. J. Mot. -Ex. Boston Aff. ¶ .) These inmates were sprayed with mace. (*Id*.) The defendants state that the gas permeated the entire unit and that the plaintiff, who was complaining of shortness of breath, was

7

removed from his cell and taken to the showers where he began to physically resist the officers and attempted to assault Officer Boston. (*Id*.)  The defendants state the plaintiff had to be physically placed in the showers. (*Id.*)  The defendants state afterwards that he was seen by the staff medical member who was present on the wing and cleared to return to his cell. (*Id*.)

The defendants state that another incident occurred earlier on January 29, 2006.  On this date, the defendants state that the plaintiff and four other inmates began breaking sprinkler heads in the Special Housing Unit ("SHU").  (Defs.' Mem. Supp. Summ. J. Mot. Ex. 3 - Boston Aff. ¶ 21.)[5] The defendants state that after the plaintiff had broken a sprinkler head in his cell  (*id.* at ¶ 22)  he refused to close his trap door and the defendants eventually maced him to get him to comply. (*Id*. at ¶ 22-25.)  The defendants state the plaintiff was then taken from his cell to the showers and then to medical.  (*Id*. at ¶ 26.)

In his response to the defendants' summary judgment motion, the plaintiff states only that the defendants did not follow the proper procedure in that a camera did not record the macing incident and there were no written reports about the incident. (Pl.'s Mem. Opp. Summ. J. Mot. at 3-4.)  Further, he alleges there is no documentation that he was treated for any injury on the day of the incident.  (*Id*. at 4.)

To establish an Eighth Amendment claim for cruel and unusual punishment, the plaintiff must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind."  <u>Wilson v. Setter</u>, 501 U.S. 294, 298 (1991).  The objective element of an excessive force claim requires more than a

---

[5]The affidavits of defendants Costella and Sligh contain substantially similar statements.  (Defs.' Mem. Supp. Summ. J. Mot. Exs. 4 and 5.)

de minimis use of force. The Supreme Court has proscribed recovery based on de minimis force, unless that use of force is "repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (internal quotation marks omitted).  De minimis injury is evidence of de minimis force.  Norman v. Taylor, 25 F.3d 1259, 1262-63 (4th Cir.1994). The Fourth Circuit Court of Appeals, en banc, has recognized a bright-line rule in the Supreme Court's jurisprudence that a de minimis injury will defeat a plaintiff's excessive force claim "absent the most extraordinary circumstances," i.e., unless the force used was "repugnant to the conscience of mankind." Norman, 25 F.3d at 1263.

When reviewing allegations of excessive force, the court must consider 1) the need for the application of force, 2) the relationship between the need and the amount of force that was used, 3) the threat to the staff and inmates as reasonably perceived by the prison officials on the basis of the facts known to them, 4) the efforts made to temper the severity of a forceful response, and 5) the extent of the injuries suffered by the prisoner.  Whitley v. Albers, 475 U.S. 312, 321 (1986). *See also* Hudson v. McMillian, 503 U.S. 1, 7 (1992) (holding the inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm). As the Fourth Circuit has held, the United States Constitution does permit small quantities of pepper spray, or mace, to be used to control recalcitrant inmates.  Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996).

Because prison officials must act "in haste, under pressure, and frequently without the luxury of a second chance," deliberate indifference is not a sufficiently rigorous standard.  Whitley, 475 U.S. 312. The courts have consistently recognized that prison officials are entitled to use force, and that not every action taken by prison officials amounts to excessive force.  Stanley v. Hejirika, 134

9

F.3d 629 (4th Cir.1998). "After incarceration, only the unnecessary and wanton infliction of pain constitutes . . . cruel and unusual punishment forbidden by the Eighth Amendment." Whitley, 475 U.S. at 319. From the evidence presented, it is appropriate to conclude that the amount of force used to have plaintiff comply with orders was reasonable and no genuine issue of material fact exists regarding the use of force by the prison guards "maliciously for the very purpose of causing harm." Williams v. Benjamin, 77 F.3d 756 (4th Cir.1996).

In addition, viewing the facts in the light most favorable to the plaintiff, his injuries were de minimis. If a prisoner's injury is de minimis, then the prisoner's excessive force claim fails as a matter of law. Norman v. Taylor, 25 F.3d 1259, 1262 (4th Cir.1994). The plaintiff's injuries do not warrant a finding of a constitutional violation and recovery of damages. Other than the plaintiff's allegations that he suffered several cuts and bruises and a dislocated shoulder (compl. at 4), there is no evidence that the plaintiff suffered anything more than a de minimis injury from incidents he alleged occurred on February 2, 2006.[6]

Further, in regard to the plaintiff's allegations that the defendants failed to follow procedure and did not record the alleged macing incident, the failure of a prison official to follow prison procedures does not, standing alone, amount to a constitutional violation. *See* Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983 ); Scott v. Hamidullah, 2007 WL 904803 *5 n. 6 (D.S.C. March 21, 2007) (*citing* Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469

---

[6]The undersigned notes that prior to the incident alleged in the complaint, on January 31, 2006, the plaintiff filed a request for medical treatment stating the he was "suffering from a sprung hand and a possible neck fracture . . ." (Defs. Mem. Supp/ Summ. J. Mot. -Harrell Aff. Ex. B Part 4 at 9.)

(4th Cir.1990); Johnson v. S.C. Dep't of Corrections, 2007 WL 904826 at *12 (D.S.C. Mar.21, 2007) ("Plaintiff's allegation that defendants did not follow their own policies or procedures, standing alone, does not amount to a constitutional violation.") (*citing* Riccio, 907 F.2d at 1469). Accordingly, the undersigned recommends that the defendants' motion for summary judgment be granted.

### 2. Medical Indifference Claims

The plaintiff also alleges a claim for medical indifference to his medical needs. He alleges he was not treated for two weeks following the incident on February 2, 2006. (Compl. at 4.) The defendants contend the plaintiff has failed to state a medical indifference claim against them. The undersigned agrees.

To establish a claim for deliberate indifference to medical needs, a plaintiff must present facts that establish the defendants had actual knowledge of and disregard for an objectively serious medical need. Farmer v. Brennan, 511 U.S. 825, 847 (1994). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" Coppage v. Mann, 906 F.Supp. 1025, 1037 (E.D.Va.1995) (*quoting* Monmouth Co. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987)). Further, an inmate is not entitled to unqualified access to health care; the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977).

First, the undersigned notes that the defendants are not medical personnel. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.* Under these principles, the plaintiff has not alleged facts stating any claim actionable under § 1983 regarding his medical treatment against the defendants who are non-medical personnel.

In any event, assuming the plaintiff's allegations are true that he was not seen by medical personnel for two weeks, at most, there was a delay in treating the plaintiff. "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1188 (11th Cir.1994). As stated above, a medical need is serious if a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" Coppage v. Mann, 906 F.Supp. at 1037. The plaintiff has failed to allege how any such delay in his treatment resulted in a detrimental effect or has caused him a life-long handicap or permanent loss. Accordingly, the defendants' motion to dismiss should be granted.

Furthermore, to the extent the plaintiff relies on the doctrine of supervisory liability, the plaintiff has failed to make any showing of supervisory liability. "Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of respondeat superior, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct

may be a direct cause of constitutional injury." <u>Miltier</u>, 896 F.2d at 854 (citation omitted). The plaintiff must demonstrate that the prisoner faces a pervasive and unreasonable risk of harm from some specified source, and that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices. *Id. See also* <u>Moore v. Winebrenner</u>, 927 F.2d 1312 (4th Cir. 1991); <u>Slakan v. Porter</u>, 737 F.2d 368, 372 (4th Cir. 1984).

### III. CONCLUSION

Based on the foregoing, it is recommended that the defendants' motion for summary judgment (documents # 27) be GRANTED and the plaintiff's complaint be dismissed.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
April 17 , 2008                                  United States Magistrate Judge
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**